MEL TRIMBLE REAL ESTATE, and
Cal Florence, Plaintiffs and
Appellants,

v.

Leland A. FITZGERALD, Defendant
and Respondent.

No. 16746.

Supreme Court of Utah.

Feb. 13, 1981.

Robert J. DeBry and Dale F. Gardiner, Salt Lake City, for plaintiffs and appellants.

Lawrence E. Corbridge, Salt Lake City, for defendant and respondent.

HARDING, District Judge:

This appeal is from an adverse judgment on a claim for a real estate sales commission.

Appellants were in the business of selling real estate. Mel Trimble was a licensed real estate broker, and Cal Florence was employed by Trimble as a sales agent. The appellants will be referred to herein jointly as Florence.

The ranch property involved in this action is located in Cedar Valley, Utah, and was under the management and control of Wallace Ohran. Respondent Leland A. Fitzgerald was a rancher.

Two or three years prior to December, 1977, Florence allegedly obtained an oral listing from Ohran to sell the ranch property. The terms of the oral listing allowed Florence to seek offers, and if any offer was accepted by Ohran, a six percent commission would be paid on the sale.

In October, 1977, through the efforts of Florence, Fitzgerald became interested in a part of the ranch and an offer was made to Ohran. The offer was unacceptable to Ohran. About December 1, 1977, there was a meeting of Ohran, Fitzgerald and Florence in which Ohran told Fitzgerald he would sell the ranch for $2,000,000, and that he would pay the sales commission of six percent from the proceeds of the sale. During the course of their discussion, Ohran said that he would reduce the sale price of the ranch to $1,875,000 if Fitzgerald would pay the commission. Fitzgerald agreed to this proposal. Nothing was put in writing at this time.

On December 7, 1977, Ohran, Fitzgerald, Florence and other interested persons met in American Fork, Utah, in an effort to effect a final sales agreement and to reduce it to writing. Up to this time, there had been no binding contract for a real estate listing, a sales commission, nor for the sale of any property. At this meeting, further discussions ensued. A sales commission for $125,000 to Florence was mentioned. Florence asked that there be two earnest money agreements: one for Fitzgerald's part of the ranch, and the other for Florence's part of the ranch. Ohran said there would have to be one entire sale. Fitzgerald and Florence retired to another room to discuss the matter between themselves. The testimony is conflicting as to what was discussed at this private conference. About one-half hour later, when they rejoined the others, Fitzgerald said that he would take title to the property and would take care of Florence.

Thereupon, an earnest money agreement was made and executed between Monte Vista Ranch, Inc. (Ohran's principal) and Fitzgerald for the sale of the ranch for $1,875,000. The agreement had a provision stating, "Buyer to be responsible for all real estate commissions." No further particulars were discussed at the meeting nor stated in the earnest money agreement with respect to a real estate sales commission.

Later that evening, Fitzgerald and Florence had a discussion concerning the purchase that had been made of the ranch, but their testimony is conflicting as to any determination. However, Fitzgerald did give Florence a check for $5,000. Their testimony is in conflict as to what the check was for.

On August 7, 1978, appellant filed a complaint, alleging that he and Fitzgerald had jointly purchased the assets of the Monte Vista Ranch, Inc., that he was entitled to an accounting, and demanded judgment for his share of the assets. The theory upon which the original complaint was based was later abandoned, and an amended complaint was filed praying for a sales commission in money only of $125,000. The case went to trial with a jury on the latter theory. A verdict against appellant was returned, upon which judgment was entered. The court denied appellant's motions for judgment notwithstanding the verdict and for a new trial.

Appellant contends that the court erred in failing to give a requested instruction, No. 23, on the specific theory that he was a third-party beneficiary in the earnest money agreement between the seller and Fitzgerald, the buyer of the ranch property. In this regard, it is essential for a third-party beneficiary claimant to prove that the contract was intended to benefit him directly. One incidently benefited by the performance of a promise to a third person may not maintain an action against the promisor. The terms of the agreement and the facts and circumstances that surrounded its making can be examined to determine whether the supposed beneficiary was in fact intended to be such.[1]

The court gave Instruction No. 8, to which appellant excepted. The portions of this instruction relevant here are as follows:

The controversy centers around an earnest money receipt and offer to purchase agreement dated December 7, 1977, by which the corporate owner of the ranch agreed to sell it to defendant for the price stated therein. Among other

1. *Kelly v. Richards*, 95 Utah 560, 83 P.2d 731 (1938); 129 A.L.R. 164.

things, this agreement contained a provision that defendant, Laland [sic] A. Fitzgerald, as buyer was to be responsible for all real estate commissions. . . .

. . . the court has ruled as a matter of law that the agreement of December 7, 1977, imposed upon defendant the liability for the real estate commission, if any, owed plaintiffs upon this transaction. Normally, the amount of any such commission would have been as fixed by agreement between the real estate salesman and the parties to the earnest money agreement and should your determination from the evidence be that in this case such was done and agreed to at the time of the execution of that agreement, no one could unilaterally change the agreement, and you should return your verdict accordingly; but should your determination be that while defendant agreed with the seller to be responsible for all real estate commissions at the time the agreement was signed, but that at that time Cal Florence and Leland Fitzgerald were still negotiating with each other with respect to the nature of the transaction as between themselves and how and in what manner and in what amount any such commission was to be paid, you are instructed that they could between themselves make an agreement thereon by which each would be bound irrespective of the intent or belief of the seller, and once such agreement was made, neither could change that agreement without the consent of the other.

Thus, it is your responsibility to determine from the evidence what amount, if any, is owed by defendant to plaintiffs. The burden is upon the plaintiffs to prove by a preponderance of the evidence the basis for, and the amount of, their claim.

■ After reading the transcript of the trial proceedings, including the testimony of the witnesses, and considering the theories of the parties and the applicable law, we think Instruction No. 8 fairly and adequately covered the contentions of the parties as they were presented to the court. We find no error in giving Instruction No. 8, and in refusing to give appellants' requested Instruction No. 23.

■ Appellants' assertion of error in failing to direct a verdict of liability against the defendant is without merit, since there were sharp conflicts in the testimony on the issue of the sales commission claimed by Florence, or whether there should have been a sales commission at all.

The record shows that the verdict of the jury was based on competent, relevant, and admissible evidence; that the trial judge supported the verdict by his denial of appellants' motions for judgment notwithstanding the verdict and for a new trial; and that he accorded to the litigants a fair and full trial, without prejudicial error.

Affirmed. Costs to respondents.

HALL, STEWART and CROCKETT,* JJ., and HENRIOD, Retired Justice, concur.

MAUGHAN, C. J., and HOWE, J., do not participate herein.

HENRIOD, Retired Justice, and HARDING, Retired District Judge, sat.